IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| TYLER M. COPELAND,<br><br>  Plaintiff,<br><br>v.<br><br>GEORGIA DEPARTMENT OF CORRECTIONS,<br><br>  Defendant. | Civil Action No. CV620-57<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Tyler M. Copeland (hereinafter, "Plaintiff" or "Copeland") and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*  Plaintiff alleges that Defendant Georgia Department of Corrections subjected him to harassment and a hostile work environment, failed to promote him, and failed to properly pay overtime wages, respectfully showing as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331, 1343, & 1391 and the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 and the Fair Labor Standards Act, 29 U.S.C. § 216.

2.

Venue is proper in this judicial district and the division of this Court because the events underlying this action, occurred in Tattnall County, Georgia, which is located in this judicial

district and division, pursuant to 28 U.S.C. § 1391, 42 U.S.C. § 2000e-5(f)(3), and the Rules of this Court.

## PARTIES

3.

Plaintiff is a citizen of the United States and a resident of Georgia.

4.

At all times relevant to this suit, Plaintiff, who now holds the rank of lieutenant, has been employed as a correctional officer with Defendant at its Rogers State Prison, located at 1978 Georgia Highway 147, Reidsville, Tattnall County, Georgia 30453.

5.

Plaintiff is a covered, non-exempt employee under all laws referenced herein

6.

Defendant Georgia Department of Corrections (hereinafter, "Defendant") is a department and political subdivision of the State of Georgia. Defendant may be served by delivering a copy of the Summons and Complaint to its Commissioner, Timothy C. Ward, at Defendant's headquarters, located at 7 Martin Luther King, Jr. Drive, Suite 543, Atlanta, Fulton County, Georgia 30334.

7.

Defendant has employed far in excess of fifteen employees every week of the current and preceding years and is otherwise a covered entity and employer within the meaning of Title VII of the Civil Rights Act.

8.

As a public agency, Defendant is a covered entity and employer with the meaning of the Fair Labor Standards Act.

## STATEMENT OF FACTS

9.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

10.

Lt. Copeland was assigned female at birth, but he identifies and presents as male.

11.

In 2017, Lt. Copeland began his medical transition.

12.

In August 2018, Lt. Copeland completed the process of legally changing his name.

13.

In September 2018, Lt. Copeland decided to "come out," or voluntarily disclose and live openly regarding his gender identity, at work and with his coworkers.

14.

Around this time, Lt. Copeland notified Defendant's Human Resources Department of his name change, but Defendant refused to make these changes in Lt. Copeland's personnel file until after he first met with Defendant's HR Director Betsy Thomas.

15.

Lt. Copeland complied with Defendant's demand to meet with Ms. Thomas.

16.

However, Defendant still refused to make any changes to Lt. Copeland's personnel file until sometime in Spring 2019.

17.

Ms. Thomas then felt it necessary to speak with Lt. Copeland's coworkers. She advised Lt. Copeland's coworkers, including his subordinates, to address Lt. Copeland with male pronouns and his rank at the time, "Sergeant."

18.

However, the most-serious harassment of Lt. Copeland began soon after this meeting.

19.

After this meeting, the same coworkers who had previously called Lt. Copeland "sir" began to call him "ma'am" on a regular basis.

20.

After this meeting, several coworkers would intentionally refer to Lt. Copeland as female around new employees.

21.

Coworkers began misgendering Lt. Copeland by referring to him as female over the prison-wide two-way radio channel and, in response, other individuals would press the push-to-talk button to intentionally transmit their laughter.

22.

Frequently, Lt. Copeland was aware of coworkers discussing his personal information, and spreading rumors and gossip, outside of his presence.

23.

These conversations included discussions pertaining to Lt. Copeland's genitalia.

24.

On one occasion, a coworker was discussing Lt. Copeland and the coworker stated, "she must have a dildo in her paints."

25.

Beyond making Lt. Copeland uncomfortable in the workplace, he was concerned that these kinds of remarks would cause him to be subjected to increased security screenings when entering the facility, including invasive strip searches.

26.

In addition to the conduct from Lt. Copeland's coworkers, including employees whom he was assigned to supervise, Lt. Copeland's supervisors were responsible for additional harassment.

27.

In February 2019, Lt. Copeland felt that it was necessary to address a group of his subordinates, as he had been authorized to do by his supervisors. However, after this conversation, he was threatened with disciplinary action because his requests not to be harassed were seen as interference with other's religious beliefs.

28.

For example, one supervisor began calling him names such as "baby girl" on a regular basis. This individual did not make similar comments about Lt. Copeland before he came out as transgender.

29.

Particularly when it came to scheduling and assignments, Lt. Copeland was treated less favorably than his similarly situated coworkers whom expressed themselves in a manner consistent with those traditionally associated with the sex they were assigned at birth.

30.

In June 2019, Lt. Copeland contacted an HR representative to explain the treatment that he was experiencing and the HR representative said that she would contact the Warden.

31.

On the same day, Lt. Copeland's supervisors abruptly reassigned him to begin working the less-desirable night shift, despite having worked the day shift his entire career

32.

Defendant failed to provide any reason or explanation for the reassignment.

33.

In early July 2019, Lt. Copeland scheduled several medical appointments related to his specific needs on what had been his days off.  After he was reassigned to night shift, he advised one lieutenant of the appointment and requested two days off.  The lieutenant insisted that Lt. Copeland share the reasons for the appointment, but refused to excuse him from work those days.

34.

Lt. Copeland ultimately did not show up for work so he could see his doctors and the lieutenant disciplined him for not working.

35.

Critically, the same supervisor was known to excuse Lt. Copeland's coworkers when, unlike Lt. Copeland, they request time off for medical appointments but do not provide any documentation related to the appointment.

36.

The same month, this lieutenant asked then-Sgt. Copeland and a female sergeant to continue working to assist with movement of inmates that was occurring during a shift change. The lieutenant let a male sergeant clock out and leave. When a captain later heard about this incident, he stated, "that's sexist, isn't it" and proceeded to laugh about it.

37.

Lt. Copeland reported these incidents of intentional harassment to his supervisors.

38.

Lt. Copeland's supervisors observed many of the incidents of harassment and even participated in some.

39.

When these incidents were observed or reported by Lt. Copeland, the common response was that he should give people time.

40.

Defendant's leadership failed to take any corrective or disciplinary action whatsoever.

41.

This harassment often occurred within earshot of inmates, which then caused inmates to make inappropriate comments to and about Lt. Copeland regarding his sex and gender identity.

As a result, Lt. Copeland believed that the actions of his coworkers and supervisors were placing his safety at an exceptional risk.

42.

The harassment continued and, in late August 2019, one of the correctional officers supervised by Lt. Copeland threatened him verbally

43.

Immediately after this exchange, the correctional officer physically blocked Lt. Copeland from passing her and leaving the area.

44.

A fellow sergeant observed the verbally- and physically-threatening before, but failed to take any action and merely laughed about the incident.

45.

The correctional officer than stated that she is offended when Lt. Copeland takes issue with others calling him "ma'am" because the correctional officer "is proud to be a woman."

46.

Several days later, the same correctional officer pushed Lt. Copeland in the front entryway of the prison.

47.

Around the same time, while he was sitting in his personal vehicle while on a break, Lt. Copeland also observed this same individual circling his car, stalking Lt. Copeland in a threatening manner.

48.

After he reported these events, Defendant failed to take any disciplinary or corrective action against the correctional officer.

49.

Instead, Defendant scrutinized Lt. Copeland's actions, subjected him to an internal affairs investigation, in which the investigator made inappropriate comments to Lt. Copeland relating to his gender identity. Specifically, the investigator insisted on referring to Lt. Copeland as female and blamed him for someone causing the correctional officer's offensive conduct.

50.

One of the interviews was conducted at Lt. Copeland's home, which is out of the ordinary, and Lt. Copeland was required to produce private information from his social media account.

51.

After Lt. Copeland objected to how this interview was conducted and what the investigator said to him, Defendant claimed that it was no longer able to access the audio recordings taken during the interview due to a glitch or virus.

52.

Lt. Copeland sought numerous opportunities for promotion, but, despite his qualifications, Defendant failed to promote him due to his gender identity.

53.

Defendant further failed to consider Lt. Copeland's requests to be transferred to another facility.

54.

The constant harassment was negatively impacting Lt. Copeland's wellbeing and he submitted numerous requests to Defendant's Employee Assistance Program to get a referral to a mental health professional. The EAP initially failed to follow up with Lt. Copeland.

55.

However, Defendant's EAP finally referred Lt. Copeland to a counselor in late 2019.

56.

The counselor requested a meeting with Lt. Copeland's supervisors, which occurred in March 2020. Prior to the meeting, the Warden and HR Director asked Lt. Copeland for a list of names of people who were causing him the most problems.

57.

Lt. Copeland believed that this meeting would be with his EAP counselor, the Warden, and the HR Director. However, when he arrived, he found that five of the individuals he had identified as harassers were present.

58.

Even during this meeting, the other employees continued to call Lt. Copeland "she" and "ma'am." The EPA counselor observed that Lt. Copeland's picture was posted on the wall with several other supervisors; however, Defendant had posted an old photograph of Lt. Copeland and refused to replace it with a more recent photo, that was available, with him presenting as male.

59.

The individual in charge of promotions to the rank of lieutenant was removed from this position for reasons unrelated to Lt. Copeland. After his removal, Lt. Copeland finally received the promotion that he had sought, but failed to get, on numerous occasions.

60.

In preparing this case, Lt. Copeland has found that, despite often working in excess of 40 hours in many workweeks, Defendant has merely compensated Lt. Copeland at his regular rate of pay, not at the appropriate overtime rate.

Procedural Background

61.

On September 30, 2019, Lt. Copeland submitted his Charge of Discrimination to the Equal Employment Opportunity Commission, alleging ongoing harassment, hostile work environment, and disparate treatment, all based on sex and gender identity, in violation of Title VII of the Civil Rights Act. (Charge No. 410-2020-00117.)

62.

Defendant received notice and submitted a Position Statement to the EEOC on or about January 31, 2020.

63.

The EEOC failed to provide a copy of Defendant's Position Statement to Lt. Copeland and request his response, as is customary in the Atlanta District Office.

64.

After Lt. Copeland failed to respond to the Position Statement that he had not been aware of, the EEOC issued its Dismissal and Notice of Rights, which was received by Lt. Copeland, through counsel, on March 18, 2020

## COUNT I:
## HARASSMENT AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

65.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 64, as if the same were set forth herein.

66.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of sex. *See* 42 U.S.C. § 2000e-2(a).

67.

"Sex discrimination includes discrimination against a transgender person for gender nonconformity." *Chavez v. Credit Nation Auto Sales*, LLC, 641 Fed. Appx. 883, 884 (11th Cir. 2016) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)).

68.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

69.

Plaintiff is a member of a protected class in that he is a transgender male.

70.

As alleged herein, Defendant subjected Plaintiff to unwelcome conduct in the form of offensive comments and slurs, epithets, name calling, physical assaults and threats, intimidation, insults, and offensive and inappropriate topics of conversation based on Plaintiff's sex and gender nonconformity.

71.

As alleged herein, said conduct was severe and pervasive enough to create a hostile work environment that a reasonable person would consider intimidating, hostile, and abusive.

72.

Plaintiff personally found such conduct and words extremely offensive.

73.

Plaintiff informed Defendant and its employees and agents that said conduct was unwelcome and he reported the harassment from his coworkers to his supervisors.

74.

Plaintiff's supervisors were directly responsible for some of the harassment, and Defendant failed to take steps to prevent and correct the harassing conduct. Defendant also failed to provide Plaintiff with the opportunity to engage in any preventative or corrective opportunity.

75.

Defendant is liable for the conduct of its non-supervisory employees as Defendant knew and should have known about the harassment of Plaintiff by its non-supervisory employees and Defendant failed to take prompt and appropriate corrective measures.

76.

The conduct at issue was directly connected to Plaintiff's sex, gender identity, and notions of stereotyping based on sex.

77.

Defendant is unable to articulate a legitimate, nondiscriminatory reason for the alleged conduct.

78.

Plaintiff has been injured by Defendant's harassment and hostile work environment, and is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT II:
## FAILURE TO PROMOTE
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

79.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 64, as if the same were set forth herein.

80.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees on the basis of sex. *See* 42 U.S.C. § 2000e-2(a).

81.

"Sex discrimination includes discrimination against a transgender person for gender nonconformity." *Chavez v. Credit Nation Auto Sales*, LLC, 641 Fed. Appx. 883, 884 (11th Cir. 2016) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)).

82.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

83.

Plaintiff is a member of a protected class in that he is a transgender male.

84.

On numerous occasions during 2018 and 2019, Plaintiff applied for the for a promotion to the rank of lieutenant.

85.

Plaintiff had met the applicable qualifications for a promotion to the rank of lieutenant.

86.

Defendant rejected Plaintiff's application for the position of lieutenant, despite his qualifications.

87.

After Plaintiff's application was rejected, the position lieutenant remained open, Defendant continued to seek applicants with the same qualifications as Plaintiff, and Defendant ultimately hired applicants who presented themselves in a manner consistent with stereotypes for their biological sex.

88.

Defendant is unable to articulate a legitimate, nondiscriminatory reason to rebut the presumption of discrimination.

89.

Plaintiff has been injured by Defendant's failure to promote, and Plaintiff is entitled to all damages allowed under Title VII, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT III:
## RETALIATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

90.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 64, as if the same were set forth herein.

91.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because an employee has opposed any practice made an unlawful by Title VII. 42 U.S.C. § 2000e-3(a).

92.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively. *See* 42 U.S.C. §§ 2000e & 2000e-1.

93.

As alleged herein, Plaintiff engaged in activities protected by Title VII by objecting to and making frequent complaints to his supervisors regarding Defendant's harassment and discrimination of him based on his sex, gender identity, and gender nonconformity.

94.

As alleged herein, Plaintiff engaged in activities protected by Title VII by objecting filing a Charge of Discrimination with the Equal Employment Opportunity Commission on September 30, 2019.

95.

As alleged herein, Defendant subjected Plaintiff to adverse employment actions in response to Plaintiff's involvement in protected activity, including, but not limited to increased harassment, hostile work environment, subjecting Plaintiff to discipline and threatened discipline, and failure to consider Plaintiff for promotions.

96.

Plaintiff has been injured by Defendant's retaliation to Plaintiff's engagement in protected activities, and is entitled to all damages allowed under Title VII, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT IV:
## FAILURE TO PAY OVERTIME
## IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

97.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 64, as if the same were set forth herein.

98.

Under the Fair Labor Standards Act, a covered employer must pay a rate of not less than one and one-half times an employee's regular rate of pay for any time worked in excess of forty hours for any given workweek.  29 U.S.C. § 201(a)(1).

99.

As alleged herein, Plaintiff is a covered employee under the Fair Labor Standards Act.  *Id.*

100.

As alleged herein, Defendant is a covered employer under the Fair Labor Standards Act.  *Id.*

101.

Since Plaintiff has been employed with Defendant, Defendant frequently fails to pay overtime at the appropriate rate for his time worked in excess of forty hours per week, the exact amount which may be ascertained through discovery and review of Defendant's records.

102.

Defendant is notorious for failing to pay overtime consistent with the Fair Labor Standards Act,[1] meaning that this Court should find that this violation is willful.

103.

Plaintiff has been injured by Defendant's failure to pay overtime wages during, at least, the three years preceding the filing of this complaint, and he is entitled to all damages available under the Fair Labor Standards Act including unpaid overtime compensation, liquidated damages, and attorney's fees and costs of litigation, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tyler M. Copeland respectfully prays for the following relief:

1) That Summons and Process be issued to Defendant Georgia Department of Corrections, and that Defendant be served as provided by law;

2) That this matter be tried before a jury;

3) That judgment be awarded for and in favor of Plaintiff on Count I for all damages available under Title VII of the Civil Rights Act;

---

[1] *see* News Release, U.S. Dep't of Labor Recovers $429,005 in Back Wages for Ga. Dep't of Corrections Officers, Department of Labor Wage and Hour Division (Sept. 26, 2018).

4) That judgment be awarded for and in favor of Plaintiff on Count II for all damages available under Title VII of the Civil Rights Act;

5) That judgment be awarded for and in favor of Plaintiff on Count III for all damages available under Title VII of the Civil Rights Act;

6) That judgment be awarded for and in favor of Plaintiff on Count IV for all damages available under the Fair Labor Standard Act;

7) For such other relief as this Court shall seem just and proper.

Respectfully submitted, this 9th day of June, 2020.

KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorney for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com