**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

TYLER M. COPELAND,

    Plaintiff,

        v.

GEORGIA DEPARTMENT OF
CORRECTIONS,

    Defendant.

CV 620-057

**O R D E R**

Presently pending before the Court is Defendant Georgia Department of Corrections' ("GDOC") motion for summary judgment. (Doc. 46.)   For the following reasons, the GDOC's motion is **GRANTED.**

## I. BACKGROUND

On June 9, 2020, Plaintiff filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (Compl., Doc. 1, at 1.)   The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, & 1391 as well as through the enforcement provisions of Title VII and the FLSA. (Id.)

Plaintiff is a Lieutenant with the GDOC at Rogers State Prison in Reidsville, Georgia, within this District. (Doc. 46-2, at 1.) Plaintiff was "born a biological female," or in other words, "assigned female at birth." (Id.; Doc. 58-1, at 2.) However, in 2017, Plaintiff began hormone replacement therapy to transition from female to male. (Doc. 46-2, at 1.; Doc. 58-1, at 3.) Around August 2018, Plaintiff legally changed his name to Tyler M. Copeland and began identifying to others as a male. (Id.) Plaintiff notified the GDOC Human Resources ("HR") Department of his name change, spoke with Becky Johnson, and provided her with copies of the paperwork reflecting the same. (Doc. 58-1, at 3.) Ms. Johnson told Plaintiff she would need a birth certificate that reflected his name and gender change. (Id. at 4.) Plaintiff gave Ms. Johnson these documents, but there was still a delay in his name change because HR required Plaintiff meet with HR Director Betsy Thomas. (Id.) Ms. Thomas then held a meeting with all employees at Rogers State Prison to inform them of Plaintiff's transition and instruct them to address Plaintiff with male pronouns and/or as Sergeant Copeland. (Doc. 46-2, at 1-2.) After this meeting, much of the harassment Plaintiff experienced began. (Doc. 58-1, at 4.)

The GDOC has a policy that prohibits sexual harassment; however, the policy attached to the GDOC's motion has an effective date of March 1, 2019, after the events giving rise to the suit took place. (Doc. 46-2, at 2; Doc. 58-1, at 5; Doc. 46-4, at 2.)

Regardless of when it was effective, Plaintiff was aware of it, but argues the GDOC did not follow the policy. (Doc. 58-1, at 5-6.)   Following the HR meeting, Plaintiff's coworkers would intentionally refer to him using female pronouns both face-to-face and over the prison-wide radio channel. (Compl., at 4.) Plaintiff alleges he "was aware of coworkers discussing his personal information, and spreading rumors and gossip, outside of his presence." (Id.) He also alleges his supervisors were involved in the harassment - one supervisor even called him names such as "baby girl" on a regular basis. (Id. at 5.)   In June 2019, Plaintiff was treated less favorably than similarly situated non-transgender coworkers with regards to his scheduled work hours, so he contacted HR to explain the treatment. (Id. at 6.)   The same day, his supervisors reassigned him to work the less-desirable night shift for the first time in his career. (Id.)   In July 2019, Plaintiff had several medical appointments scheduled on what had previously been his days off; however, when he requested the days off for his new shift, the Lieutenant refused to excuse him and then disciplined him for not showing up. (Id.)   Plaintiff alleges the same supervisor was known to excuse his coworkers when they requested time off for medical appointments. (Id. at 7.)

Plaintiff alleges one notable series of interactions occurred in late August 2019 when Officer Holland, an officer he supervised, threatened him verbally, pushed him, and then stalked his car in a threatening manner while he was in it during a break. (Id. at

8; Doc. 58-1, at 7.)   Officer Holland told Plaintiff she was offended when he took issue with others calling him "ma'am" because she was "proud to be a woman." (Compl., at 8.)  He reported these events to the GDOC, and it opened an investigation which found the allegations of sexual harassment and assault were not sustained. (Id. at 9; Doc. 46-5, at 2-5.)   Between the time Plaintiff came out as transgender in September 2018 and when he was promoted to lieutenant in 2020, Plaintiff submitted four or five applications for promotion and a transfer request to transfer to another prison but was denied the promotions and transfer.   (Doc. 46-2, at 2; Doc. 58-1, at 10.)  Plaintiff is unaware who made the decision not to promote him; however, he feels certain "such individuals were aware [of] the harassment that he experienced, as well as his complaints."   (Doc. 46-2, at 2; Doc. 58-1, at 11.)   After the individual in charge of lieutenant promotions was removed for other reasons, Plaintiff received his promotion to lieutenant.  (Compl., at 10.)

On September 30, 2019, Plaintiff submitted his Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") alleging ongoing harassment, hostile work environment, and disparate treatment, all based on sex and gender identity. (Id. at 11.)  He never received a copy of the GDOC's position statement and was never able to respond, so the EEOC issued its dismissal and notice of rights, which Plaintiff received on March

4

18, 2020.[1]   (Id.)   In preparing for this lawsuit, he discovered the GDOC compensated him at his regular rate of pay even when he worked in excess of 40 hours many workweeks.   (Id.)   Plaintiff filed this suit on June 9, 2020, alleging 4 claims: (1) Title VII harassment and hostile work environment; (2) Title VII failure to promote; (3) Title VII retaliation; and (4) failure to pay overtime in violation of the FLSA.   (Id. at 12-18.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted).   The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real

---

[1] "In order to assert a claim of . . . discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred." Stafford v. Muscogee Cnty. Bd. of Educ., 688 F.2d 1383, 1387 (11th Cir. 1982) (citing 42 U.S.C. § 2000e-5(e)).

Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).  The Court should not weigh the evidence or determine credibility.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, ˝475 U.S. at 586 (citations omitted).  A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice.  See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

The GDOC here does not bear the burden of proof at trial, and therefore may "satisfy its initial burden on summary judgment in either of two ways."  McQueen v. Wells Fargo Home Mortg., 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  First, the GDOC "may simply show that there is an absence of evidence to support [Plaintiff's] case on the particular issue at hand."  Id. (citation omitted).  If this occurs, Plaintiff "must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  Id. (citation omitted).  Or second, the GDOC may "provide affirmative evidence demonstrating that [Plaintiff] will be unable to prove [his] case at trial."  Id.  (citation omitted and alterations in original).

6

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

In this action, the Clerk of Court provided Plaintiff notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 47.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff responded to the GDOC's motion. (Doc 58.)[2] The time for filing materials has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

---

[2] Plaintiff originally filed a response on February 2, 2022 (Doc. 53); however, the Court then granted the requested extension of time to file a response on February 4, 2022 and allowed Plaintiff to file a superseding response (Doc. 54). Therefore, the Court ignores Doc. 53 as it has been superseded by Doc. 58.

## III. DISCUSSION

The GDOC moves for summary judgment on all of Plaintiff's claims, arguing: (1) he cannot establish his work environment was sufficiently hostile to support a Title VII claim; (2) he cannot establish a causal connection sufficient to establish liability for failure to promote; (3) he cannot establish a claim for retaliation; and (4) the Eleventh Amendment bars his claim under the FLSA. (Doc. 46-1, at 2.)  The Court addresses the arguments below.

### A. FLSA Claim

The GDOC argues Plaintiff's claims under the FLSA are barred by the Eleventh Amendment, and Plaintiff does not disagree.  (Id. at 9; Doc. 58, at 9.)  Plaintiff makes policy arguments about how this is a "truly absurd result" but admits he is unable to find any authorities to dispute the GDOC's arguments. (Doc. 58, at 9.)

The Court agrees with the GDOC.  The GDOC is a state department for which Eleventh Amendment immunity protections apply.  Preston v. Hall, No. 5:20-cv-140, 2020 WL 1991412, at *2 (M.D. Ga. Apr. 27, 2020) (citing Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989)).  "The Eleventh Amendment protects a [s]tate from being sued in federal court without the [s]tate's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).  The State of Georgia has not consented to being sued for claims under the FLSA.  Crane v. Pineland Mental Health, No. CV 206-047, 2007 WL 9702303, at *1 (S.D. Ga. Jan. 25, 2007) ("State agencies are immune

from FLSA suits in federal court, and Georgia has not waived its sovereign immunity under these circumstances."); Garnett v. Georgia, No. CV 106-032, 2007 WL 9701364, at *3 (S.D. Ga. Jan. 3, 2007) (finding "the State of Georgia has not waived its immunity" to FLSA claims).  Based on the foregoing, the GDOC is entitled to summary judgment on Plaintiff's FLSA claim.

## B. Title VII Claims

Next, the GDOC argues Plaintiff has insufficient evidence to support his Title VII claims.  (Doc. 46-1, at 3-8.)  The Court will address each Title VII claim below.

### 1. Hostile Work Environment

Title VII "prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting 42 U.S.C. § 2000e-2(a)(1)).

> [A] plaintiff wishing to establish a hostile work environment claim [must] show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Id. (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)).

As a transgender man, Plaintiff belongs to a protected group. See Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1747 (2020) ("[D]iscrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second."). This satisfies element one. The GDOC does not challenge this element or elements two and three; therefore, the Court will accept that Plaintiff was subject to unwelcome harassment, and it was based on his transgender status. (See Doc. 46-1, at 3.) The GDOC challenges elements four and five, arguing Plaintiff cannot prove these elements, and thus, his claim fails. (Id.)

"Not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." Mendoza, 195 F.3d at 1245 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). "Establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component." Id. at 1246 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). "The employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to

alter the terms or conditions of employment, and this subjective perception must be objectively reasonable" and "[t]he environment must be one that a reasonable person would find hostile or abusive and that the victim subjectively perceives to be abusive." Id. (alterations adopted and quotations and citations omitted). "Workplace conduct is not measured in isolation." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (per curiam)). Instead, "the evidence of harassment is considered both cumulatively and in the totality of the circumstances." Id. (quoting Mendoza, 195 F.3d at 1242). For the objective component, the Court "look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (citation omitted); see also Mendoza, 195 F.3d at 1246 ("The objective component of this analysis is somewhat fact intensive. . . . The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." (citations omitted)).

The GDOC argues "[t]he conduct at issue was not sufficiently severe or pervasive to alter the terms and conditions of [Plaintiff's] employment." (Doc. 46-1, at 3.) It argues "Plaintiff's contentions that he was referred to as [m]a'am or she by co-workers is simply insufficient to constitute an abusive working environment. The Plaintiff was born a biological female and acknowledged in his deposition that there are different definitions of what fully transitioning to a male means." (Id. at 4.) The GDOC also argues the incident with Officer Holland would not constitute harassment or create a hostile work environment. (Id.) The GDOC relies on Mendoza's illustration of cases from other courts that support harassment claims and argues the behavior at issue here falls far short of meeting that standard. (Id. at 4-5.)

The GDOC also asserts there is no basis for holding it liable under vicarious liability because it has a statewide sexual harassment prevention policy, and HR Director Thomas met with the employees to remind them of the policy and explain gender discrimination was not allowed. (Id. at 5-6.) Therefore, the GDOC argues it exercised reasonable care to prevent harassment and took prompt action to investigate Plaintiff's complaint about Officer Holland. (Id. at 6.)

In response, Plaintiff argues he "has clearly been subjected to a hostile work environment" because he "has been subjected constantly to harassment on the basis of his sex and gender

identity." (Doc. 58, at 10-11.) Plaintiff argues that pursuant to an EEOC decision, "continued, intentional misuse of an employee's name and pronouns may undermine such employee's treatment during a gender transition, which is contrary to the idea of treating transgender employees with dignity and respect, and it could also breach the employee's privacy and create a risk of harm to the employee." (Id. at 11 (citation omitted).) As to the GDOC's liability, Plaintiff finds its arguments "entirely disingenuous" because it was clearly on notice of Plaintiff's harassment and failed to act. (Id. at 12-13.) Further, he argues his supervisors took part in the harassment. (Id.)

The undisputed facts show Plaintiff likely subjectively perceived the conduct at the prison as sufficient enough to alter the terms and conditions of his employment, as shown by the complaint he filed with HR, his EEOC Charge, and the filing of this suit. The objective element, however, requires a deeper dive into the associated facts using the four factors set out above. See Nat'l R.R. Passenger Corp, 536 U.S. at 116.

First, the Court will look at the frequency of the discriminatory conduct. Upon review of Plaintiff's documented harassment, over the period of a year from September 2018 when Plaintiff changed his name until the filing of his EEOC charge in September 2019, there were about 17 recorded instances. (Doc. 46-3, at 113-119.) Quite a few of the occurrences fail to provide any connection to Plaintiff's transgender status; for example, an

13

officer looking directly at Plaintiff while reprimanding him and his co-workers has no apparent tie to Plaintiff being transgender. (Id. at 117.)   Nevertheless, even accepting all of the actions as harassment, it does not seem frequent enough to meet the Nat'l R.R. Passenger Corp factors.   The Eleventh Circuit has analyzed a variety of cases based on the frequency element and these facts are most closely aligned with the plaintiff in Guthrie v. Waffle House, Inc., 460 F. App'x 803 (11th Cir. 2012).   In Guthrie, the Eleventh Circuit held that "[the] evidence - alleging only a few dozen comments or actions by [the perpetrators], spread out over a period of eleven months, that could arguably be construed as harassment - is more similar to the evidence we saw in Mendoza than that we addressed in Reeves, Dees or Miller."   Id. at 807 (citing Mendoza, 195 F.3d at 1250 (holding that four instances of alleged harassment over an eleven month period was insufficient to prove Title VII harassment); Dees v. Johnson Controls World Servs., Inc., 168 F.3d 417 (11th Cir. 1999) (reversing summary judgment for employer when Plaintiff alleged "almost-daily abuse"); Miller, 277 F.3d at 1276 (holding that ethnic slurs made to plaintiff three or four times a day over a two month period was sufficiently frequent)).   Plaintiff does not provide evidence the harassment he received was daily; in fact, he admits that "a lot of people have accepted [him] and have had good faith effort addressing [him] accordingly" but "there are still a handful of individuals who constantly harass [him] at work." (Doc. 46-3, at 113.)   Although

Plaintiff alleges the harassment occurs "constantly", his enumerated occurrences do not support this conclusory statement – they illustrate harassment occurred but was spread out over the course of a year. The Court finds this is not so frequent as to alter the terms and conditions of Plaintiff's employment.

Second, the Court looks at the severity of the conduct. As the Supreme Court has held, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 787-88 (citations and quotation marks omitted) (citing cases instructing "discourtesy or rudeness should not be confused with racial harassment and that a lack of racial sensitivity does not, alone, amount to actionable harassment"). These holdings, although applied in the race discrimination context, illustrate that simple rudeness and discourtesy does not alter the terms and conditions of employment sufficient to violate Title VII. "[C]ommon sense, and an appropriate sensitivity to social context, help distinguish between simple teasing and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." Barreth v. Reyes 1, Inc., No. 5:19-cv-320, 2020 WL 4370137, at *7 (M.D. Ga. July 29, 2020) (alterations adopted and quotation marks omitted) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)). Although the Court finds Plaintiff's co-workers and supervisors were rude in their statements and treatment of his transition, the

actions fall short of conduct so severe it alters Plaintiff's working conditions.

Third, the Court considers whether the conduct was physically threatening or humiliating, or a mere offensive utterance. The evidence only contains two occurrences that could be perceived as physically threatening, and there is no evidence of any humiliation of Plaintiff. (Doc. 46-3, at 118.) First, Officer Holland pushed Plaintiff because she was "proud to be a woman." (Doc. 58, at 13-14.) While this involved physical contact, it was investigated by the GDOC, which determined Officer Holland pushed Plaintiff "on the shoulder in [a] joking manner as she has done several times to staff she considers her friend," and the video footage did not appear aggressive in nature. (Doc. 46-5, at 4.) The second occurrence was another officer that "proceeded to walk up behind [Plaintiff] and slap [him] on [his] right shoulder firmly with her right hand." (Doc. 46-3, at 118.) There is no evidence this was done in a harassing manner, so the Court will not find the conduct rose to the level of physically threatening or humiliating.

And fourth, the Court will look at whether the conduct unreasonably interfered with Plaintiff's work performance. There is no evidence the harassment interfered with Plaintiff's work conditions – in fact, as of the filing of the Complaint, Plaintiff was promoted to lieutenant and still worked at Rogers State Prison. (Compl., at 2; Doc. 46-3 at 16.)

Based on these factors and a totality of the circumstances, the Court finds Plaintiff has not met the objective component required to establish the harassing conduct was sufficiently severe or pervasive to alter the terms or conditions of his employment. Therefore, Plaintiff has failed to establish a hostile work environment, and the Court will not address element five regarding the employer's responsibility for the environment. The GDOC is entitled to summary judgment on this claim.

2. Retaliation and Failure to Promote

On numerous occasions in 2018 and 2019, Plaintiff applied for a promotion to the rank of lieutenant and met the applicable qualifications, but the GDOC rejected him. (Compl., at 15.) Ultimately, the GDOC "hired applicants who presented themselves in a manner consistent with stereotypes for their biological sex." (Id.) Plaintiff argues he engaged in protected activities by objecting to and making frequent complaints to his supervisors about the harassment and discrimination, and the GDOC subjected him to adverse employment actions by increased harassment, hostile work environment, discipline, and a failure to consider him for promotions. (Id. at 16-17.) The GDOC argues the failure to promote claim fails because Plaintiff "cannot show that the decision makers for the [l]ieutenant positions for which he was not hired had knowledge of his complaints of discrimination." (Doc. 46-1, at 8.) Further, it argues the retaliation claim fails because Plaintiff cannot establish he suffered an adverse

employment action. (Id. at 7.) The GDOC argues that even if failure to promote was the adverse action, Plaintiff cannot establish a causal connection for either claim. (Id. at 8.)

"Title VII . . . prohibit[s] employers from taking adverse actions against employees in retaliation for their opposition to statutorily prohibited . . . discrimination." Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 229 (11th Cir. 2011) (citing 42 U.S.C. § 2000e-3(a)). To establish retaliation, Plaintiff must prove: "(1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." Id. (citing Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1212–13 (11th Cir. 2008)). It is undisputed Plaintiff engaged in a protected activity by complaining to his supervisors, filing an EEOC charge, and filing this lawsuit. Plaintiff argues the adverse action he suffered is the GDOC refusing to transfer or promote him. (Doc. 58, at 14.) The GDOC argues Plaintiff has failed to prove a causal connection. (Doc. 46-1, at 8.)

Plaintiff alleges he was denied a promotion "numerous" times. (Compl., at 9.) He is "unable to say who the individuals were who made the decision not to promote him;" however, three of his applications were at Rogers State Prison, so he argues they "were most certainly aware" of his complaints. (Doc. 58-1, at 11; Doc. 58, at 14.) Additionally, he only received his promotion to

lieutenant after the individual in charge of promotions was removed for unrelated reasons.  (Compl., at 10.)

"The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Williams, 411 F. App'x at 229 (quoting Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)).  However, once a plaintiff establishes a prima facie case of retaliation, "the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." Pennington, 261 F.3d at 1266 (citations omitted).  Plaintiff ultimately has the burden of proving beyond a preponderance of the evidence that the employer's provided reason is a pretext for prohibited, retaliatory conduct.  Id.  "At a minimum, a plaintiff must generally establish that the employer was *actually aware* of the protected expression at the time it took adverse employment action." Williams, 411 F. App'x at 229 (emphasis added) (quoting Clover v. Total Sys. Serv., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999)).  The causal connection "may be inferred by close temporal proximity between the protected activity and the adverse employment action[;]" however, "mere temporal proximity, without more, must be very close." Id. (citation omitted).

Plaintiff cannot rely on mere temporal proximity because he provides no dates for the "numerous" times he applied for promotions but was skipped over.  Therefore, the turning point of

the Court's analysis is, as the GDOC argues, the causal connection required to bring a claim for retaliation based on failure to promote.  Plaintiff, in his deposition, admitted he was unaware who made the hiring decisions for his department.  (Doc. 46-3, at 64.)  Further, when asked if the decision makers had information about his complaints, he responded: "I'm sure they did.  But can I confirm that they did? No." (Id.)  He admits his assumption is pure speculation and later explains he is unable to name the people responsible but believes they "were most certainly aware." (Id.; Doc. 58, at 14.)

The  Court  finds  Plaintiff's  evidence  insufficient  to establish the decision makers for a promotion to lieutenant were aware of his protected activity.  As Plaintiff admits, "it would be pure speculation" to infer the decision makers actually knew about his complaints. See Clover, 176 F.3d at 1355.  Plaintiff is required to prove the decision maker was actually aware of the protected activity at the time it took adverse action, and here, Plaintiff fails to meet that burden. See id. at 1354.  As held in Clover, there is a key difference between "could have told" and "did tell" in terms of decision makers having information, and here there is no evidence of who the decision makers were or what they knew. Id. at 1355; see also Cid v. City of Miramar, 810 F. App'x 816, 822 (finding no causal connection because Eleventh Circuit refused to speculate that a human resources investigator told the decisionmaker about plaintiff's protected activity).

Therefore, the Court finds there is insufficient evidence to establish a causal connection between the protected activity and the decision not to promote Plaintiff, making Plaintiff's failure to promote and retaliation claims fail. The GDOC is entitled to summary judgment on both claims.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the GDOC's motion for summary judgment (Doc. 46) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of the Georgia Department of Corrections, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 22nd day of August, 2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA